UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EDDIE CALHOUN,

                              Plaintiff,

       v.                                            **DECISION AND ORDER**
                                                     03-CV-386S
MASTEC, INC., MASTEC NORTH AMERICA, INC.,
PHASECOM AMERICA, INC., JAMES YOUNG and
ERIC WASMUND,

                              Defendants.

## I. INTRODUCTION

Plaintiff Eddie Calhoun commenced this employment discrimination action by filing

a Complaint in the United States District Court for the Western District of New York.

Therefore, Plaintiff alleges several discrimination causes of action related to disparate

treatment and hostile work environment based on race, color and national origin brought

pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"),

the Civil Rights Act of 1870, as amended, 42 U.S.C. § 1981, and § 290 of the New York

Human Rights Law ("NY HRL").   He also alleges several state common law claims,

including intentional infliction of emotional distress.

This Court has federal question jurisdiction over Plaintiff's federal claims pursuant

to 28 U.S.C. § 1331, and supplemental jurisdiction over his state law claims pursuant to

28 U.S.C. § 1367.   Presently before this Court is Defendants' Motion for Summary

Judgment.[1]  For the reasons stated below, Defendants' motion is granted in its entirety.

---

[1]In support of their Motion for Summary Judgment, Defendants filed the following documents: a
memorandum of law; the Affirmation of Richard A. Braden, Esq., with attached exhibits; the Affidavit of
James Young, with attached exhibits; a Rule 56 Statement of Undisputed Material Facts; the Reply
Affirmation of Richard A. Braden, Esq., with attached exhibits; and a reply memorandum of law.  In
opposition to Defendants' motion, Plaintiff filed two memoranda of law, a Rule 56 Statement of Facts, with
attached exhibits, and the Affirmation of Eddie Calhoun, with attached exhibits (manually filed).

## II.  BACKGROUND

### A.    Procedural History

Plaintiff filed his Complaint in this action on May 14, 2003.  At that time he was represented by counsel.  Plaintiff continued to be represented by counsel until December 27, 2004, when this Court granted counsel's Motion to Withdraw as Attorney of Record. Plaintiff was thereafter afforded approximately three months to obtain new counsel. Unable to do so, he filed a Motion to Appoint Counsel on April 4, 2005, which was denied by the Magistrate Judge on April 12, 2005.  Plaintiff proceeded through what was left of discovery pro se, and continues to represent himself in this matter.  On January 27, 2006, Defendants filed the instant Motion for Summary Judgment, which this Court took under advisement after full briefing.

### B.    Facts[2]

MasTec North America is a wholly owned subsidiary of MasTec, Inc. (collectively "MasTec").  (Defendants' Statement, ¶ 1.[3])  MasTec is one of the largest end-to-end voice, video data and energy infrastructure solution providers in the United States.  (Defendants' Statement, ¶ 2.)   Its primary business is the design, engineering, installation, and maintenance of internal and external telecommunications and energy networks that serve as the basis for telecommunications, Internet and energy systems.  (Defendants' Statement, ¶ 2.)

MasTec conducted business in Western New York first as Phasecom America and

---

[2]Additional facts will be included below as necessary in the discussion of Plaintiff's individual claims.

[3]Referring to Defendants' Rule 56 Statement of Undisputed Material Facts, which contains citations to the record evidence.

then as MasTec.  (Defendants' Statement, ¶ 3.)  It worked as a contractor for Adelphia Communications Corporation providing Adelphia's residential and commercial customers with cable and broadband connections for cable television, digital services and high-speed Internet access.  (Defendants' Statement, ¶ 3.)

Plaintiff began his employment with MasTec in May of 1998 as a cable installation technician.  (Defendants' Statement, ¶ 4.)  Plaintiff and other technicians were compensated on a "piece-rate" basis, meaning that their earnings were dependent on the number of jobs they satisfactorily completed in a day.  (Defendants' Statement, ¶ 4.)  In general, the more jobs the technicians completed, the more money they earned. (Defendants' Statement, ¶ 5.) However, MasTec management could also assign "add-ons" to the technicians, which, depending on the nature and length of the job, could result in the technician earning less money. (Plaintiffs' Statement, ¶ 5.[4])

Plaintiff's duties required him to maintain a presentable and professional appearance and satisfactory customer relations while interacting with Adelphia subscribers. (Defendants' Statement, ¶ 6.)  He was expected to maintain his company vehicle, perform relatively error-free work, accept "add-ons" as directed by supervisors or dispatch, and report to dispatch his completed assignments throughout the day (known as "call-ins"). (Defendants' Statement, ¶ 6.)  Plaintiff was expected to regularly report for work, to arrive at work on time, and to punch-in at MasTec's local office and receive his computer-generated assignments for the day.  (Defendants' Statement, ¶¶ 6, 7.)

Upon receiving his assignments, Plaintiff was responsible for ensuring that he had

---

[4]Referring to Plaintiff's Rule 56 Statement of Facts, wherein he responds to each of Defendants' numbered statements of fact.

the appropriate tools, parts and equipment for completion of the jobs. (Defendants'
Statement, ¶ 7.) Plaintiff spent the majority of his workday in the field driving between his
various appointments installing, connecting, disconnecting, or troubleshooting cable
services and other telecommunications equipment for Adelphia subscribers. (Defendants'
Statement, ¶¶ 8, 9.)

James Young served as MasTec's district manager. (Defendants' Statement, ¶ 9.)
He was responsible for most personnel matters and occasionally consulted with human
resource specialists in MasTec's corporate offices with respect to complex issues.
(Defendants' Statement, ¶ 11.)  Four supervisors – Daniel Hudson, James Tant, Eric
Wasmund and Daniel D'Amato – assisted Young in managing MasTec's Western New
York operations and helped supervise the technicians and dispatchers. (Defendants'
Statement, ¶ 10.) Hudson was responsible for technical matters; Tant was responsible for
personnel matters; Wasmund was responsible for the fleet and safety issues; D'Amato was
the field supervisor. (Defendants' Statement, ¶ 12.)

On March 20, 2002, Young terminated Plaintiff's employment with the company.
(Defendants' Statement, ¶ 32.)  Defendants assert that in the fifteen months prior to
Plaintiff's termination, supervisors Tant, Hudson, Wasmund and D'Amato regularly
counseled and warned Plaintiff (both verbally and in writing) about deficiencies in his job
performance. (Defendants' Statement, ¶ 21.) They contend that Plaintiff's personnel file
contains numerous written reprimands and documents reflecting work performance
deficiencies throughout the fifteen-month period preceding his termination, including twelve
Adelphia service quality reviews indicating a failure to maintain its technical and other
requirements. (Defendants' Statement, ¶ 22.)  Plaintiff asserts that he was never

4

counseled by any manager or warned that his work performance was unsatisfactory. (Plaintiff's Statement, ¶ 21.)  He contends that any reprimands or other evidence documenting his poor performance has been either forged or fabricated by Defendants. (Plaintiff's Statement, ¶¶ 21, 22.)

Young met with Plaintiff on March 20, 2002, to discuss his unsatisfactory work performance and to determine whether Plaintiff had been using his company vehicle to perform unauthorized side jobs.  (Defendants' Statement, ¶¶ 29, 30.)  Defendants assert that Plaintiff initially denied using the company vehicle for unauthorized work, but then admitted doing so.  (Defendants' Statement, ¶ 31.)  Plaintiff alleges that he never misused the vehicle and never admitted doing so.  (Plaintiff's Statement, ¶¶ 31, 32.) Young advised Plaintiff that he was terminating his employment with MasTec based on his unauthorized use of a company vehicle and due to his inconsistent and unsatisfactory work performance.  (Defendants' Statement, ¶ 33.)  Young made this determination on his own, without consulting or obtaining approval from any other MasTec employee.  (Defendants' Statement, ¶ 34.)  Plaintiff contends that he was fired because he is African-American.

## III.  DISCUSSION AND ANALYSIS

### A.    Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return

a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under governing law." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S.Ct.1598, 1609, 26 L.Ed.2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

In the context of employment discrimination cases, the United States Court of Appeals for the Second Circuit has explicitly cautioned district courts to use extra care when deciding whether to grant summary judgment because "the ultimate issue to be resolved in such cases is the employer's intent, an issue not particularly suited to summary adjudication." Eastmer v. Williamsville Cent. Sch. Dist., 977 F. Supp. 207, 212 (W.D.N.Y. 1997) (quoting Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994)). Nonetheless, "[t]he summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). Indeed, the Second Circuit has noted that "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation." Id.

6

**B.     Plaintiff's Discrimination Claims**[5]

**1.      Title VII Framework**

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer[6] to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2(a)(1); Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S.Ct. 2148, 2150, 156 L.Ed.2d 84 (2003).  It is now well settled that discrimination claims brought under Title VII are analyzed under the burden-shifting analysis first set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973).  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000).

The burden-shifting test first requires that the plaintiff establish a *prima facie* case of discrimination by showing that (1) he is a member of a protected class, (2) he is qualified for his position, (3) he suffered an adverse employment action, and (4) the circumstances of the adverse action give rise to an inference of discrimination.  Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (citing McDonnell Douglas, 411 U.S. at 802).

---

[5]Defendants argue that they are entitled to summary judgment on any retaliation claim, to the extent one is alleged.  However, Plaintiff does not assert a retaliation claim in his Complaint, nor does he raise or suggest one in his motion papers.

[6]Although somewhat unclear, one or the other MasTec defendants was Plaintiff's employer.  The Title VII claims against the other defendants are therefore dismissed.  See Tomka v. Seiler Corp., 66 F.3d 1295, 1313-16 (2d Cir. 1995), abrogated on other grounds by, Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).  Pursuant to the New York Court of Appeals' decision in Patrowich v. Chemical Bank, however, individual liability under the NY HRL can lie against a corporate employee if he or she is shown to have (1) an ownership interest in the company, or (2) the power to do more than carry out personnel decisions made by others.  See Patrowich v. Chemical Bank, 473 N.E.2d 11, 12, 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659 (1984) (per curiam); see also Foley v. Mobil Chemical Co., 214 A.D.2d 1005, 1006, 626 N.Y.S.2d 908, 909 (1995).  As such, the NY HRL claim against Young cannot be dismissed at the outset on the grounds that he is not an employer.  As discussed herein, however, the claim against him, to the extent one is alleged against him in his individual capacity, fails on the merits.

If the plaintiff meets this initial burden and establishes a *prima facie* case, a rebuttable presumption of discrimination arises, and the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action. Texas Dep't of Comt'y Affairs v. Burdine, 450 U.S. 248, 254, 101 S. Ct. 1089, 1094, 67 L. Ed.2d 207 (1981)).  If the defendant succeeds in making this showing, "the presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture."  Weinstock, 224 F.3d at 42 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11, 113 S. Ct. 2742, 125 L. Ed.2d 407 (1993)).

Assuming that the defendant meets its burden at the second stage, the burden returns to the plaintiff to prove that the defendant's discrimination was intentional.  In this regard, the plaintiff must produce "evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." Weinstock, 224 F.3d at 42.  "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination." Id.  However, "[i]t is not enough . . . to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination." Id. (quoting St. Mary's, 509 U.S. at 519).

**2.     Plaintiff's Disparate Treatment Claims**

A disparate treatment claim arises when a member of a protected class is treated less favorably than others under circumstances from which an unlawful motive could be inferred.  See Schwabenbauer v. Bd. of Ed. of City Sch. Dist. of City of Olean, 667 F.2d 305, 309 (2d Cir. 1981); see also Ott v. Perk Dev. Corp., 846 F.Supp. 266, 275 (W.D.N.Y. 1994).  Plaintiff's disparate treatment claims based on race, color and national origin are

brought in his first three causes of action pursuant to Title VII, § 1981, and § 296 of the

New York Human Rights Law.  (Complaint, ¶¶ 51-62.)  Each of these claims is subject to

the same burden-shifting analysis described above and they will therefore be discussed

together.  See Weinstock, 224 F.3d at 42 n.1 (identical standards apply to employment

discrimination claims brought under both Title VII and NY HRL § 296) (citing cases); Rose

v. Mendon Leasing Co., 969 F.Supp. 865, 867 n.2 (E.D.N.Y. 1997) (§ 1981 claims are

analyzed under the Title VII framework).

### a.    Plaintiff's *Prima Facie* Case

Defendants argue that Plaintiff cannot make out a *prima facie* case of discrimination

because his job performance was unsatisfactory at the time he was terminated, and

because his employment was not terminated under circumstances supporting an inference

of unlawful discrimination.

"The burden of establishing a *prima facie* case of disparate treatment is not

onerous."  Burdine, 450 U.S. at 253; see also Carlton v. Mystic Transp., Inc., 202 F.3d 129,

134 (2d Cir. 2000) (characterizing burden as "minimal").   Given this minimal burden,

Plaintiff's allegations of discriminatory animus, and MasTec's proffer of a legitimate, non-

discriminatory reason for terminating Plaintiff's employment, this Court finds it most

expeditious to assume the existence of a *prima facie* case and move to the next stage of

the analysis.  See Besht v. Gen. Motors, 327 F.Supp.2d 208, 212-13 (W.D.N.Y. 2004)

(citing United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715, 103 S.Ct.

1478, 1482, 75 L.Ed.2d 403 (1983) ("Where the defendant has done everything that would

be required of him if the plaintiff had properly made out a prima facie case, whether the

plaintiff really did so is no longer relevant.")); <u>Wado v. Xerox Corp.</u>, 991 F.Supp. 174, 187 (W.D.N.Y. 1998).

### b.    MasTec's Legitimate, Non-Discriminatory Reason

The burden is now on MasTec to produce a legitimate, non-discriminatory reason for terminating Plaintiff's employment.  <u>See</u> <u>Reeves</u>, 530 U.S. at 142 (noting that the defendant's burden at the second stage is not one of proof or persuasion, but is more appropriately considered a burden of production.)  "This explanation must be 'clear and specific.'"  <u>Gallo</u>, 22 F.3d at 1226 (quoting <u>Meiri</u>, 759 F.2d at 997).

MasTec states that it terminated Plaintiff's employment due to Plaintiff's unauthorized use of his company vehicle and his inconsistent and unsatisfactory work performance.  (Young Aff., ¶¶ 31-35.)  The record contains ample evidence that Plaintiff received numerous written and verbal warnings and was advised that his work was sub-par.  (Young Aff., ¶¶ 26-27 and Exhibit D[7].)  For example, the documents show that in just the several weeks prior to his termination, Plaintiff was repeatedly cited for completing tasks in a manner that did not meet the applicable standards.  (Young Aff., ¶ 27 and Exhibit D.)  In addition, Plaintiff received several reprimands for being late, violating company policy and procedures, and not properly returning company equipment.  (Young Aff., ¶ 27 and Exhibit D.)

Moreover, there is evidence in the record that prior to Plaintiff's termination, a Caucasian employee was fired for misuse of a company vehicle.  (Young Aff., ¶ 36.)  In

---

[7]Exhibit D to the Young Affidavit includes copies of the written reprimands and other documents from Plaintiff's personnel file.

10

addition, three other Caucasian employees were terminated at about the same time as Plaintiff for performance reasons or for failure to follow company policy.  (Young Aff., ¶ 37.)

Finally, although Defendants admit that Plaintiff's unsatisfactory work was tolerated for a period of time, <u>see</u> Young Aff., ¶ 28, they assert that Adelphia began demanding strict adherence to contractor performance standards and advised MasTec that it would consider cancelling its contract unless the performance of MasTec's technicians improved, <u>see</u> Young Aff., ¶ 29.  Thus, Young could no longer tolerate poor performance or violations of company policy, and therefore he terminated Plaintiff's employment for business-related reasons.  (Young Aff., ¶ 34.)

Based on the above, this Court finds that MasTec has articulated a legitimate, non-discriminatory reason for Plaintiff's termination.  The presumption of discrimination created by Plaintiff's demonstration of a *prima facie* case now "drops out of the picture."  <u>Hicks</u>, 509 U.S. at 511.

### c.    Pretext for Intentional Discrimination

The burden now returns to Plaintiff to demonstrate that MasTec's non-discriminatory reason is mere pretext for actual unlawful discrimination.  "Where a plaintiff has alleged that an employer's reasons for an adverse employment action are pretextural, all reasonable inferences must be drawn in favor of the plaintiff's showing of pretext."  <u>Joseph v. Manhattan & Bronx Surface Transit Operating Auth.</u>, No. 96 Civ. 9015, 2004 WL 1907750, at *14 (S.D.N.Y. Aug. 25, 2004).   At this stage, the court must "examin[e] the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the

plaintiff.'"  Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000) (quoting Reeves, 530 U.S. at 143.)  This requires the court to determine whether "there is sufficient potential proof for a reasonable jury to find the proffered legitimate reason merely a pretext for impermissible retaliation."  Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 443 (2d Cir. 1999).

A defendant's proffered non-discriminatory reason, however, "cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason."  Olle v. Columbia Univ., 332 F.Supp.2d 599, 617 (S.D.N.Y. 2004) (quoting St Mary's, 509 U.S. at 502); see also AB v. Rhinebeck Cent. Sch. Dist., 224 F.R.D. 144, 153 n.9 (S.D.N.Y. 2004).  Therefore, to avoid summary judgment, Plaintiff must establish the existence of a genuine issue of fact as to whether MasTec's proffered explanations are false and a mere pretext for unlawful discrimination.  Weinstock, 224 F.3d at 42.  Unless Plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination, MasTec is entitled to summary judgment.  See James, 233 F.3d at 154.

In this Court's view, Plaintiff has failed to identify any evidence from which a jury could find that MasTec fired him because he is black.  First, Plaintiff has set forth no evidence from which it could be concluded that MasTec's business-related reason for firing him is false.  Plaintiff concedes that he has no information to refute MasTec's assertion that Adelphia threatened to cancel its contracts with MasTec if employee performance did not improve.  (Plaintiff's Answering Memorandum, p. 3 ("I have no information as to the problems between Adelphia and MasTec.").)  Nor does he refute Young's testimony that

unsatisfactory work could no longer be tolerated in light of Adelphia's position.  (Young Aff., ¶¶ 29, 34.)

Second, Plaintiff has failed to raise a material issue of fact related to his job performance.  Plaintiff denies that he was ever informed in writing or orally that there was any problem with his work.  (Calhoun Aff., p. 2.)  Yet he relies on documents from Adelphia that themselves contain notations that some of his work-related tasks were performed below acceptable standards.  (Calhoun Aff., Exhibit 1.)  Moreover, Plaintiff offers no evidence to rebut the documents from his personnel file offered by MasTec that identify repeated deficiencies in his job performance and an inability to follow company policy and procedures.  (Young Aff., Exhibit D.)  Rather, he baldly asserts (with no evidentiary support) that these documents are all forged or fabricated.  (Calhoun Aff., p. 3.)  This unsupported, blanket denial is insufficient to raise an issue of fact.  Thus, all the evidence presented on this issue supports MasTec's contention that Plaintiff's job performance and conformity with company policy was at least inconsistent, if not routinely sub-par.

Third, while Plaintiff alleges that "add-ons" were sometimes assigned as a punitive measure to "get rid of employees," see Calhoun Aff., p. 3, he also notes that "add-ons" were generally assigned to all employees, and in fact,"[a]s a general rule add-ons meant more money," see Calhoun Aff., pp. 2, 3.  Plaintiff has not offered any evidence demonstrating that MasTec assigned him add-ons in a greater quantity or with greater frequency than it did Caucasian technicians.  Moreover, even assuming that MasTec assigned Plaintiff a disproportionate number of add-ons, he has presented no evidence demonstrating that it did so because he is black.

Finally, Plaintiff concedes that he has no evidence concerning "Caucasian terminations." (Plaintiff's Statement, ¶ 35; Plaintiff's Answering Memorandum, p. 3.)  He therefore is unable to prove that MasTec treated similarly situated Caucasian technicians differently.  Moreover, Plaintiff does not dispute MasTec's evidence that it terminated Caucasian employees for the same or similar reasons that it terminated Plaintiff.  (Young Aff., ¶¶ 36, 37.)

Simply being treated differently than one's co-workers is not actionable under Title VII.  To be actionable, the motivation for the disparate treatment must be based on one of the prohibited factors in Title VII, such as race, color or national origin.  Here, there is no disputed issue of material fact or any evidence from which a reasonable factfinder could conclude that MasTec terminated Plaintiff's employment because he is black or African-American.  Plaintiff has failed to carry his burden of putting forth evidence from which a reasonable trier of fact could conclude that MasTec's legitimate, non-discriminatory reason for terminating his employment is false, and that MasTec actually discriminated against him based on his race, color or national origin.  MasTec is therefore entitled to summary judgment on these claims.  See James, 233 F.3d at 154; see Lizardo v. Denny's, Inc., 270 F.3d 94, 104 (2d Cir. 2001) (per curiam) (affirming district court's granting of summary judgment where the plaintiffs did "little more than cite to their mistreatment and ask the court to conclude that it must have been related to their race . . . This is not sufficient.")

### 3.    Plaintiff's Hostile Work Environment Claims

The Supreme Court has held that Title VII's protection extends beyond "economic" or "tangible" discrimination.  Harris v. Forklift Sys., 510 U.S. 17, 21, 114 S.Ct. 367, 370,

126 L. Ed. 2d 295 (1993) (citing Meritor Savings Bank, FSV v. Vinson, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed. 2d 49 (1986)).  Rather, Congress enacted Title VII to "strike at the entire spectrum of disparate treatment of men and women in employment," including the requirement that employees work in a hostile or abusive environment.  Harris, 510 U.S. at 21.

To survive a motion for summary judgment, a plaintiff claiming that he was the victim of a hostile work environment must produce evidence from which a reasonable trier of fact could conclude "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer."  Mack v. Otis Elevator Co., 326 F.3d 116, 122 (2d Cir. 2003) (quoting Richardson, 180 F.3d at 436).  "The sufficiency of a hostile work environment claim is subject to both subjective and objective measurement: the plaintiff must demonstrate that she personally considered the environment hostile, and that the environment rose to some objective level of hostility."  Leibovitz v. New York City Transit Auth., 252 F.3d 179, 188 (2d Cir. 2001).

Defendants argue that they are entitled to summary judgment because (1) Plaintiff failed to exhaust this claim, and (2) the evidence in the record cannot support a finding on either of the two prongs cited above.

### a.    Failure to Exhaust

Ordinarily, a plaintiff commencing a Title VII action must exhaust his or her administrative remedies by first presenting the claims to the EEOC.  Bailey v. Colgate-

Palmolive Co., No. 99 Civ. 3228, 2003 WL 21108325, at *12 (S.D.N.Y. May 14, 2003).

Failure to do so defeats the purpose of Title VII's statutory notice provision, which is "to

encourage settlement of discrimination disputes through conciliation and voluntary

compliance." Miller v. Int'l Tel. & Tel. Corp., 755 F.2d 20, 26 (2d Cir. 1985); Burnett v. ESL

Fed. Credit Union, 198 F.Supp.2d 307, 314-15 (W.D.N.Y. 2002).   Consequently, courts

routinely dismiss unexhausted Title VII discrimination claims.  Bailey, 2003 WL 21108325,

at *12 (citing cases).  Here, Plaintiff did not present a hostile work environment claim to the

EEOC.  (Complaint, Exhibit A.[8])  MasTec is therefore entitled to summary judgment for

Plaintiff's failure to exhaust.

### b.    Severity of Discriminatory Intimidation in the Workplace

Even if Plaintiff had properly exhausted his hostile work environment claim, this

Court finds that it would fail on the merits.   Courts examine various factors to ascertain

whether a work environment is sufficiently hostile or abusive to support a Title VII claim.

These factors include "the frequency of the discriminatory conduct; its severity; whether it

is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's performance."   Leibovitz, 252 F.3d at 188

(citing Harris, 510 U.S. at 23); Terry v. Ashcroft, 336 F.3d 128, 147-48 (2d Cir. 2003).

Isolated and occasional instances of harassment do not ordinarily rise to this level.  See

Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270-271, 121 S. Ct. 1508, 149 L. Ed.

2d 509 (2001) (per curiam).  The appropriate test is whether the "harassment is of such

quality or quantity that a reasonable employee would find the conditions of her employment

---

[8]Exhibit A to the Complaint is a copy of Plaintiff's EEOC Charge.

altered for the worse. . . ." Torres v. Pisano, 116 F.3d 625, 632 (2d Cir. 1997).  The Second Circuit has stated:

> The environment need not be unendurable or intolerable.  Nor must the victim's psychological well-being be damaged.  In short, the fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases.

Terry, 336 F.3d at 147-48 (quotations, citation and alterations omitted).

This Court finds that there is insufficient evidence in the record from which a reasonable jury could find that Plaintiff was subjected to severe and pervasive discriminatory conduct that altered his work environment.  First, while Plaintiff at times states that he was harassed by Wasmund and complained to Young about it, he offers no details whatsoever as to the nature or severity of the alleged harassment.   In fact, throughout his deposition and in many of his interrogatory responses, Plaintiff stated that he could not recall, or could not fully recall, any acts of harassment.  (Defendants' Statement, ¶ 47.)  He also states that he never complained about his treatment at work.[9] (Defendants' Statement, ¶ 47(s).)

Second, even assuming that some harassment took place, it appears that Plaintiff did not know about it at the time he worked for MasTec.  In his papers, Plaintiff states that he learned that he was called racial epithets and was referred to by management as dirty

---

[9]Plaintiff urges this Court to disregard his deposition testimony because it was taken at a time when he was grieving the death of his uncle. (Plaintiff's Statement, ¶ 47.)  However, when Plaintiff's deposition resumed at a later date, he was provided the opportunity to correct or clarify his earlier deposition testimony, and did so in regard to certain portions of his testimony.  (Braden Reply Aff., ¶¶ 6-10 (explaining the circumstances of Plaintiff's deposition).)  As such, this Court finds no cause to disregard Plaintiff's deposition testimony.

and smelly only after discovery commenced in this case.   (Plaintiff's Answering Memorandum, p. 3.)  In his affirmation, Plaintiff states that "I had no idea what was being said about me prior to my termination.  I did not know that [sic] what I was being called or how these people felt about black people until I began this case."  (Calhoun Aff., p. 2.)

As best as this Court can tell from Plaintiff's submissions, he has recently come to the conclusion that individuals with whom he worked were saying racially derogatory things about him behind his back.  Even if this is true, fatal to Plaintiff's hostile work environment claim is his admission that he was unaware of this activity while he worked at MasTec.  He specifically states in his papers that he was not aware of any racially derogatory remarks until the beginning of discovery in this litigation, which post-dates his employment at MasTec.  The information Plaintiff provided in his deposition and interrogatory responses, even if taken as true, is therefore insufficient to support a hostile work environment claim. There is simply no evidence in the record from which a trier of fact could reasonably conclude that Plaintiff experienced a work environment that, both objectively and subjectively, "was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his] work environment."  Mack, 326 F.3d at 122. Accordingly, MasTec is entitled to summary judgment on this claim.[10]

---

[10]Plaintiff appears to rely on the testimony of Erik Vossler and Lynda Vossler in support of his claims.  However, he has not identified the specific portions of their testimony upon which he relies, nor has he directed this Court's attention to particular areas of the depositions that support his claims.  This Court's general review of the Vossler Depositions and Affidavits included in Plaintiff's manual filing reveals that they do not support Plaintiff's claims such that this Court can conclude that he has met his evidentiary burdens to move forward with this litigation.  Even considering their testimony, which consists largely of unsubstantiated general statements about the environment at MasTec, this Court finds that summary judgment in Defendants' favor is warranted.

**C.      Plaintiff's Intentional Infliction of Emotional Distress Claim**

Plaintiff's seventh cause of action alleges an intentional infliction of emotional distress claim.  (Complaint, ¶¶ 72-77.)  Upon review of the record, this Court finds that Plaintiff's claim fails.  To succeed on a claim of intentional infliction of emotional distress, a plaintiff must prove the following elements:

(1)     Extreme and outrageous conduct;

(2)     Intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress;

(3)     A causal connection between the conduct and injury; and

(4)     Severe emotional distress.

Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999) (citing Howell v. New York Post Co., Inc., 612 N.E.2d 699, 702, 81 N.Y.2d 115, 121 (1993)); see also Walker v. New York City Transit Auth., No. 99 CIV. 3337(DC), 2001 WL 1098022 (S.D.N.Y. Sept. 19, 2001).

Liability can be found only where the conduct alleged is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  Howell, 81 N.Y.2d at 122; see also Murphy v. Am. Home Prods. Corp., 448 N.E.2d 86, 58 N.Y.2d 293 (1983). Here, even assuming the truth of Plaintiff's assertions, the acts of which he complains do not rise to the level of atrociousness necessary to support an intentional infliction of emotional distress claim.  See Bradley v. Consolidated Edison Co. of New York, Inc., 657 F.Supp. 197, 205 (S.D.N.Y.1987) (the defendants' conduct "must consist of more than mere insults, indignities and annoyances and must be so shocking and outrageous as to exceed all reasonable bounds of decency").

19

Moreover, Plaintiff has failed to set forth evidence from which it could reasonably be concluded that Defendants acted with the necessary intent to cause emotional harm. Even assuming the truth of Plaintiff's allegations that Defendants harassed and mistreated him because he was black or because they wanted to force him to leave MasTec's employ, the requisite level of intent has not been demonstrated. See Hagie v. Gen. Motors Corp., No. 98-CV-0634E(H), 1999 WL 222607, *3 (W.D.N.Y. Apr. 6, 1999) ("It is not enough that a defendant's intent was tortious, or even criminal, that its conduct was aimed at inflicting emotional distress or that such conduct was characterized by malice or a degree of aggravation that would support an award of punitive damages in connection with recovering damages for a different tort.")

As to the final element, Plaintiff's claim again fails for lack of proof. In proving the fourth element – severe emotional distress – a plaintiff must support his allegations with "medical evidence, not just the mere recitation of speculative claims." Walentas v. Johnes, 683 N.Y.S.2d 56, 58 (N.Y. App. Div. 1999). The evidence must show that the plaintiff suffered severe psychological damage. Richard L. v. Armon, 536 N.Y.S.2d 1014, 1016 (N.Y. App. Div. 1989). Here, the record does not contain any medical evidence whatsoever to support Plaintiff's claim that he suffered a mental or emotional injury as a result of being fired. As such, this Court finds that no reasonable jury could conclude that Plaintiff suffered severe emotional distress. See Howell v. New Haven Bd. of Ed., No. 3:02 CV 736, 2004 WL 546829, at *2 (D.Conn. Mar. 15, 2004) (""In order to defeat summary judgment, the non-moving party must come forward with evidence that would be sufficient to support a jury verdict in his or her favor."); see Richard L., 536 N.Y.S.2d at 1016 (proof

of severe emotional distress is required for liability, not just damages).   Defendants are therefore entitled to summary judgment.   See Anderson, 477 U.S. at 249 ("There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a sufficient showing on an essential element of the case on which it has the burden of proof).

Finally, even assuming that Plaintiff could present sufficient evidence on each element of his claim, this Court finds that Plaintiff's claim is barred by the applicable statute of limitations.   "The statute of limitations for the tort of [intentional infliction of emotional distress] is one year." Lauria v. Donahue, 438 F.Supp.2d 131, 143 (E.D.N.Y. 2006); N.Y. C.P.L.R. § 215(3).   Construing the facts in the light most favorable to Plaintiff, the last activity that could give rise to an intentional infliction of emotional distress claim occurred on March 20, 2002, the date he was fired.   Plaintiff did not file his Complaint in this action until May 14, 2003, more than one year after his termination.   Accordingly, the claim is time-barred.

**D.    Plaintiff's Remaining Claims**[11]

In his fourth cause of action, Plaintiff includes a claim for breach of contract. (Complaint, ¶¶ 63-65.)   Because of Plaintiff's pro se status, this Court also examines whether Plaintiff can maintain a cause of action for breach of an implied contract.

---

[11]Plaintiff's eighth cause of action alleging defamation was dismissed by stipulation on October 5, 2003.  (See Docket No. 8.)

Employment relationships in New York are presumed to be at-will, terminable at any time by either the employer or the employee.  See Rooney v. Tyson, 697 N.E.2d 571, 91 N.Y.2d 685, 690 (1998).  The presumption of at-will employment can be rebutted, however, if a plaintiff can show "that the employer made its employee aware of an express written policy limiting the right of discharge and the employee detrimentally relied on that policy in accepting employment."  Lobosco v. New York Tel. Co., 751 N.E.2d 462, 465, 96 N.Y.2d 312, 316 (2001).

To succeed on a breach of contract claim under New York law, the plaintiff must establish "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996); see also O Zon Inc. v. Charles, No. 02 Civ. 9527 (RLE), 2003 WL 21664680, at *5 (S.D.N.Y. July 16, 2003); Laurus Master Fund, Ltd. v. Versacom Int'l, Inc., No. 02 Civ. 5340 (LTS)(MHD), 2003 WL 21219791, at *5 (S.D.N.Y. May 21, 2003).  An employee alleging a breach of implied contract must prove that "(1) an express written policy limiting the employer's right of discharge exists, (2) the employer (or one of its authorized representatives) made the employee aware of this policy, and (3) the employee detrimentally relied on the policy in accepting or continuing employment."  Baron v. Port Auth. of NY and NJ, 271 F.3d 81, 85 (2d Cir. 2001).

Plaintiff has not come forward with any evidence that he had an employment contract with Defendants or that his employment was anything other than "at-will."  This is fatal to his breach of contract claim as he cannot fulfill the first element thereof.  Moreover, on his implied contract claim, Plaintiff's unsupported allegation that he understood his

employment with Defendants to be "at cause" based on the language of the employee handbook is insufficient.  (Plaintiff's Answering Memorandum, p. 3.)  While it is true that provisions in employee handbooks may be construed as part of an employment contract under certain circumstances, Plaintiff has not identified the portions of the employee handbook upon which he relies, nor has he demonstrated that any provision gives rise to a contract right.  See Baron, 271 F.3d at 85 ("Policies in a personnel manual specifying the employer's practices with respect to the employment relationship, including the procedures or grounds for termination, may become a part of the employment contract.") (citing Marfia v. T.C. Ziraat Bankasi, 147 F.3d 83, 87-89 (2d Cir. 1998)).  Plaintiff's general reference to the existence of an employee handbook is insufficient.  Cf. Lobosco, 751 N.E.2d at 465 ("[r]outinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements.")  This Court therefore finds that Defendants are entitled to summary judgment on both of Plaintiff's contract claims.

In his fifth cause of action, Plaintiff alleges that Defendants breached the covenant of commercial good faith and fair dealing.  (Complaint, ¶¶ 66-68.)  The common law duty of good faith and fair dealing is an implied term in every contract.  See Cross v. Cross Props. Ltd. v. Everett Allied Co., 886 F.2d 497, 501-02 (2d Cir. 1989).  However, as noted above, Plaintiff cannot establish his contract claims.  Accordingly, his breach of good faith and fair dealing claim also fails.

In his sixth cause of action, Plaintiff alleges that Defendants acted with gross negligence in "failing to institute and follow their own employment policies, failed [sic] to properly investigate and remedy complaints made by plaintiff to his manager, and

23

destroyed [sic] company records." (Complaint, ¶¶ 69-71.) Again, as previously discussed in the context of the employment claims, Plaintiff has not come forward with any evidence to rebut Defendants' assertion of a non-discriminatory reason for the termination of his employment. He has not presented any evidence to support his claims that Defendants failed to follow company policy, failed to remedy any complaints he may have made,[12] or destroyed company records. Defendants are therefore entitled to summary judgment on this claim.

Finally, Plaintiff's ninth cause of action alleging that Defendants acted in violation of public policy, see Complaint, ¶¶ 84-85, is dismissed since Plaintiff has not come forward with sufficient evidence to establish that Defendants acted unlawfully in terminating his employment.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is granted in its entirety.

---

[12]As previously noted, Plaintiff has offered conflicting positions on whether he ever complained to MasTec. For example, Plaintiff concedes that he "never complained about Discrimination. This is true." (Plaintiff's Answering Memorandum, p. 3.) However, Plaintiff states elsewhere that he complained to Young about being harassed by Wasmund. (Plaintiff's Answering Memorandum, p. 3.) This harassment, however, is not described, thus there is an insufficient basis from which to conclude that this harassment was based on a protected category. Moreover, Young states that Plaintiff never complained to him about discriminatory treatment. (Young Aff., ¶¶ 38, 43.)

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 62) is GRANTED.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:   September 27, 2006
Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge